# United States Court of Appeals for the Federal Circuit

—————————

**REVISION MILITARY, INC.** (formerly known as Revision Eyewear, Inc.), **AND REVISION MILITARY, LTD.** (formerly known as Revision Eyewear, Ltd.),
*Plaintiffs-Appellants,*

**v.**

**BALBOA MANUFACTURING COMPANY** (doing business as Bobster Eyewear),
*Defendant-Appellee.*

—————————

2011-1628

—————————

Appeal from the United States District Court for the District of Vermont in Case No. 11-CV-0149, Chief Judge Christina Reiss.

—————————

Decided: November 27, 2012

—————————

ANDREW D. MANITSKY, Gravel and Shea, of Burlington, Vermont, argued for plaintiffs-appellants.

STEELE N. GILLASPEY, Gillaspey & Gillaspey, of San Diego, California, argued for defendant-appellee.

—————————

Before NEWMAN, CLEVENGER, and LINN, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Revision Military, Inc., and Balboa Manufacturing Co. design, manufacture, and sell protective eyewear. Revision markets its ballistic protective eyewear primarily to military establishments and law enforcement agencies, and also to others who require eye protection, such as hunters and range shooters. Revision alleges that Balboa's new "Bravo" design protective goggles (also called "Bobster Bravo") copied and infringes Revision's "Bullet Ant" goggles covered by U.S. Design Patents No. 537,098 (the '098 patent) and No. 620,039 (the '039 patent). After this infringement suit was filed Revision moved for a preliminary injunction, seeking to enjoin Balboa from making and selling the Bobster Bravo goggles while the litigation is pending. Revision stated that it is likely to succeed on the merits, that if the infringement is not enjoined it is likely to suffer irreparable harm, that the equities are balanced in its favor, and that public policy favors grant of a preliminary injunction on the merits and equities of this case.

The district court denied the preliminary injunction.[1] On Revision's appeal, we conclude that the district court erred in applying the Second Circuit's heightened standard of proof of likelihood of success on the merits, instead of the Federal Circuit standard for consideration of whether to impose such relief. We thus vacate the denial of the preliminary injunction, and remand for redetermination of the request on the appropriate standard.

---

[1]    *Revision Military, Inc. v. Balboa Mfg. Co.*, No. 5:11-cv-00149-cr (D. Vt. Aug. 31, 2011) (Order).

I

The general criteria for grant of a preliminary injunction are stated by the Supreme Court as follows:

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Within this framework, the circuits have developed elaborations in response to particular circumstances. Thus the Second Circuit held, in *Doninger v. Niehoff*, 527 F.3d 41 (2d Cir. 2008), that the heightened standard of "clear" or "substantial" likelihood of success on the merits applies when a movant seeks "an injunction that will alter rather than maintain the status quo." *Id.* at 47. The district court held that the heightened standard applies here, because Balboa was already offering to sell the accused Bravo goggles to Revision's customers; the district court held that an injunction would alter Balboa's status. Thus the district court held that Revision must show a clear and substantial likelihood of success, and that a simple more-likely-than-not showing is insufficient.

With respect to the applicable standard, the Federal Circuit has explained that a preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. §283 "involves substantive matters unique to patent law and, therefore, is governed by the law of this court." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988). The *Hybritech* court explained that: "Because the issuance of an injunction pursuant to this section enjoins

'the violation of any right secured by a patent' . . . a preliminary injunction of this type, although a procedural matter, involves substantive matters unique to patent law and, therefore, is governed by the law of this court." *Id. See also, e.g.*, *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994) ("An appeal from a denial of a preliminary injunction based on patent infringement involves substantive issues unique to patent law and, therefore, is governed by the law of this court."); *Purdue Pharma L.P. v. Boehringer Ingelhiem GMBH*, 237 F.3d 1359 (Fed. Cir. 2001) (on appeal from a district court in the Second Circuit, this court applied Federal Circuit, not Second Circuit, law in determining whether to grant a preliminary injunction). Although the court in *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed. Cir. 1998) drew on "the wealth of Ninth Circuit precedent" in reviewing the trial court's grant of a preliminary injunction, in that case the injunction related not to the merits of the infringement charge, but to statements to customers about the asserted infringement. *See id.* at 894 ("we give dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues").

Substantive matters of patent infringement are unique to patent law, and thus the estimated likelihood of success in establishing infringement is governed by Federal Circuit law. Revision need not meet the Second Circuit's heightened "clear or substantial likelihood" standard, but rather the Federal Circuit's standard of whether success is more likely than not. In turn, the weight of the likelihood may be considered as an equitable factor, along with issues of the position of the parties with respect to the status quo, in the ultimate balance of equities.

## II

The law of design patent infringement is stated in *Gorham Co. v. White*, 81 U.S. 511 (1871), as whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, [the] two designs are substantially the same." *Id.* at 528. In *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc) the court confirmed that "in accordance with *Gorham* . . . we hold that the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." *Id.* at 678. The en banc court's purpose was to lay to rest the "point of novelty" test for design patent infringement, and to reinforce the principles established in *Gorham. See id.* at 672 ("we conclude that the point of novelty test, as a second and free-standing requirement for proof of design patent infringement, is inconsistent with the ordinary observer test laid down in *Gorham*"); *id.* at 677 ("we hold that the 'point of novelty' test should no longer be used in the analysis of a claim of design patent infringement").

Revision states that to the eye of the ordinary observer, and viewing the designs as a whole, the designs here at issue are substantially the same. Revision offers a comparison of the patented designs in the '098 and '039 patents, and photographs of the Bobster Bravo:

      

'098 Patent Figure 2                    Bobster Bravo

 

'039 Patent Figure 2          Bobster Bravo

Revision states that the criteria of *Gorham* and *Egyptian Goddess* are met, and that infringement is more likely that not to be found at trial.

Although the district court stated the correct "overall design" standard, citing *Crocs, Inc. v. International Trade Commission*, 598 F.3d 1294, 1303 (Fed. Cir. 2010), the court focused on features that "stand out as dissimilar," reciting the shape and sizes of the lenses, the concavity of the nose bridge, and the venting along the top and bottoms. Revision states that the design of the Bravo goggles and the patented goggles is substantially the same, and that any differences would not be noticed by the ordinary observer.

Although individual features may indeed serve in assessing the "impact on the overall appearance," Order at 25, in determining whether apparently minor differences between specific features would be recognized as distinguishing the designs, it is often helpful to refer to any prior art with which the ordinary observer would reasonably be familiar. As stated in *Egyptian Goddess*, "the background prior art, provides . . . a frame of reference and is therefore often useful in the process of comparison." 543 F.3d at 677. The district court did not consider the prior art context in which the ordinary observer test is applied. Although the

district court stated that "[b]ecause this is not a particularly close case, the court does not need prior art as a 'frame of reference' to apply the 'ordinary observer test,'" Order at 22, the record suggests otherwise.  On remand, the district court may redetermine the question, applying the design-as-a-whole criterion and the more-likely-than-not standard.

It is the role of the district court to determine, in the first instance, whether a preliminary injunction is warranted on the law, facts, and equities of the case.  We vacate the denial of the preliminary injunction, and remand for redetermination in accordance with Federal Circuit criteria.

**VACATED AND REMANDED**